# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

SHAWN LOUIS SUTTER,

      Plaintiff,

v.                             CASE NO: 8:14-cv-939-T-26MAP

UNITED STATES OF AMERICA,

      Defendant.

_____/

## O R D E R

Before the Court is Plaintiff's timely Motion to Vacate, Set Aside, or Correct

Sentence filed, *pro se*, pursuant to 28 U.S.C. § 2255 with supporting memoranda of law,[1]

the Government's Response,[2] and the Plaintiff's Reply.[3]  After carefully reviewing the

motion, supplement, response, reply, and the record of the prior criminal proceedings,[4] as

required by Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United

---

[1]  See docket 1.  This Court granted Plaintiff leave to amend the motion with a supplement.  See docket 17 (order permitting original motion to vacate to be amended with supplement and directing Bureau of Prisons to allow Plaintiff to furnish copies of a CD containing contents of telephone call between Plaintiff and prior counsel, Matthew Farmer), docket 16, Exh. 1 (supplement), and docket 18 (CD of telephone conversation).

[2]  See docket 23.

[3]  See docket 26.

[4]  See Case No. 8:12-cr-301-T-26MAP.

States District Courts, the Court concludes that the motion is due to be summarily denied. There is no need for an evidentiary hearing because it plainly appears from the face of the motion and supplement, the attachments to the response and reply, and the underlying criminal proceedings that Plaintiff is entitled to no relief.

## STATEMENT OF THE CASE

Plaintiff was indicted for and convicted of conspiracy[5] to distribute and possess with intent to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture containing methamphetamine, in violation of 21 U.S.C. § 846.[6]  A written plea agreement was filed on January 18, 2013.[7]  The written plea set forth the mandatory minimum term of imprisonment of twenty years and a maximum term of imprisonment of life, with a term of supervised release of at least ten years.  The factual basis in the plea states that Plaintiff drove to Polk County on April 17, 2012, with two of his co-defendants and purchased six pounds of methamphetamine.  He and two of his co-defendants transported the methamphetamine to a hotel in Tampa on April 18, 2012.  Upon the arrival of Hillsborough County Sheriff's deputies, they found white powder and crystalline substances including drug paraphernalia scattered in open view.  After securing a search warrant from a state judge, the execution of the warrant revealed guns, a

---

[5]  Co-conspirators charged and convicted were Richard Mooers, Lauren Kassalias, and Tabitha White.

[6]  See docket 18 & 179 in Case No. 8:12-cr-301-T-26MAP.

[7]  See docket 116 in Case No. 8:12-cr-301-T-26MAP.

backpack containing over $50,000 in cash and ziplock baggies, ziplock baggies in the

bathroom, and a Pyrex container in the bathtub.  The yellow liquid in the container tested

positive for methamphetamine.  The factual basis continued:

> The defendant, along with the co-defendants, was in the
> process of crystallizing the methamphetamine for further
> distribution when police came to the hotel room.  The
> defendant intended to sell the methamphetamine, and he had
> instructed WHITE to assist him with unpacking the drugs
> inside the room, which she did.  When the police arrived, the
> defendant also instructed the co-defendants, including
> WHITE and KASSALIAS, to dispose of the
> methamphetamine by pouring it down the bathtub drain,
> which the defendant also did.  At least five pounds of
> methamphetamine were destroyed before the police made
> entry into the room.
>
> In post-arrest statements, after having been advised of and
> waiving his Miranda rights, the defendant acknowledged
> purchasing at least six pounds of methamphetamine on April
> 17th, and then bringing it to the hotel room on April 18th in
> order to crystallize and eventually distribute it.  The defendant
> further stated that he paid $15,000 per pound of
> methamphetamine, which he re-sold for $19,000 per pound,
> and that he had recently been selling approximately 10 pounds
> of methamphetamine per day.[8]

Plaintiff pleaded guilty on January 28, 2013.[9]  He was sentenced on April 26,

2013, to 240 months of imprisonment followed by supervised release of ten years, and a

---

[8]  See docket 116, p. 21 in Case No. 8:12-cr-301-T-26MAP.

[9]  See docket 229 in Case No. 8:12-cr-301-T-26MAP.

$100 special assessment.[10]  Plaintiff did not appeal his conviction and sentence.  On April

21, 2014, he timely filed the § 2255 motion now before this Court.

## CLAIMS FOR RELIEF

Plaintiff raises two claims of ineffective assistance of counsel in his motion.  First,

he asserts that counsel was ineffective for failing to act on his right to a speedy

indictment, and therefore his plea was unknowing and unintelligent.  Second, he argues

that his counsel was ineffective for failing to move to withdraw his guilty plea, having

given poor advice to accept the plea.  In the supplement to his motion, which this Court

gave leave to file, Plaintiff alleges that the prosecutor promised not to file a 21 U.S.C. §

851 sentencing enhancement in exchange for a waiver of his speedy indictment rights,

and then filed for enhancement in retaliation for him filing a motion to suppress.  He

claims his counsel was ineffective for failing to raise this fact at sentencing.  His also

raises ineffective assistance claims regarding his counsel's conflict of interest in

representing a defendant in another case and other vague accusations against the

prosecutor and his counsel.

## STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

Plaintiff's claims of ineffective assistance of counsel are governed by the standards

set forth by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct.

2052, 80 L.Ed.2d 674 (1984).  The Eleventh Circuit has explained the two-part test as

---

[10]  <u>See</u> docket 179 in Case No. 8:12-cr-301-T-26MAP.

requiring the plaintiff to establish both incompetence and prejudice by showing that "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Kokal v. Sec'y, Dept. of Corrs., 623 F.3d 1331, 1344 (11th Cir. 2010) (citing and quoting Strickland, 466 U.S. at 687-88, 694, 104 S.Ct. at 2064, 2068). The Court is not required, however, to consider them in any order, and if prejudice against the plaintiff is determined, then the adequacy of counsel's performance need not be measured. Kokal, 623 F.3d at 1344-45. In the context of a guilty plea, as in this case, the prejudice factor requires that the plaintiff show by "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 US. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). Applying these principles, the Court addresses each of Plaintiff's grounds for ineffective assistance of counsel.

## GROUND ONE

Plaintiff claims that his counsel was ineffective for failing to explain that his speedy indictment rights had been violated and for filing waivers of those rights. He argues that his plea was unknowing and unintelligent because he did not realize that his case could have been dismissed for failing to timely file an indictment. Plaintiff contends that he was arrested on April 18, 2012, and the indictment was not filed until well past thirty days, on July 26, 2012. He alleges that the second of two waivers of speedy

indictment filed was "invalid" because his attorney did not file it.  He asserts that his case should have been dismissed with prejudice based on a violation of his right to speedy indictment.

A defendant has a right to have an indictment returned within thirty days from the date he was arrested.  See 18 U.S.C. § 3161(b); United States v. Williams, 314 F.3d 552, 556 (11th Cir. 2002).  In calculating the thirty days, an initial appearance and preliminary hearing are excludable.  See 18 U.S.C. § 3161(h)(1); Williams, 314 F.3d at 557.  The start date of the Speedy Trial Act begins on the date the person charged is held in federal, not state, custody.  See United States v. Russo, 796 F.2d 1443, 1450-51 (11th Cir. 1986) (holding that a defendant is not being held to answer to federal charges until arrested on federal charges, despite involvement of state authorities); United States v. Sharhryar, 719 F.2d 1522, 1524-25 (11th Cir. 1983) (quoting a Fourth Circuit case with approval that a federal arrest, not a state arrest, triggers commencement of pre-indictment period).[11]

Plaintiff was arrested on April 18, 2012, by the state.  The federal criminal case was filed on May 9, 2012, and on May 10, 2012, attorney Matthew Farmer filed a notice of appearance as counsel of record.[12]  For purposes of the underlying federal criminal

---

[11]   Even if the speedy indictment period runs, the length of time between the federal arrest and indictment is subject to a determination of prejudice.  See Stewart v. United States, 2009 WL 909547, at *8 (N.D. Ga. Apr. 2, 2009) (finding, on § 2255 motion claiming ineffective assistance of counsel for failure to contest right to speedy indictment for passage of 32 days between federal arrest and indictment, that no prejudice occurred in waiting 32 days).

[12]   See docket 4 in Case No. 8:12-cr-301-T-26MAP.

case, Plaintiff's federal arrest warrant was executed on May 16, 2012.[13]  On May 16,

Plaintiff made his initial appearance, which is excluded from the pre-indictment period.

On June 11, 2012, according to Plaintiff, Mr. Farmer told him that the prosecutor asked if

Plaintiff would waive his speedy indictment rights in exchange for an agreement that no

sentencing enhancement would be sought.  Mr. Farmer recommended he waive his rights

and informed Plaintiff that he could still move to suppress evidence without suffering any

negative consequences.  Mr. Farmer filed a waiver of right to speedy indictment on June

11, 2012, effective through July 15, 2012.[14]  Plaintiff admitted at sentencing that he had

agreed to the waiver.[15]  He also admitted in his declaration attached to the § 2255 motion

that he authorized Mr. Farmer to waive speedy indictment.[16]

     Just before Plaintiff proffered on June 20, 2012, he asked Mr. Farmer to secure a

written letter from the prosecution promising not to seek a sentencing enhancement.[17]  A

---

[13]  See docket 8 in Case No. 8:12-cr-301-T-26MAP.

[14]  See docket 14 in Case No. 8:12-cr-301-T-26MAP.

[15]  See docket 278, pp. 25 & 58 in Case No. 8:12-cr-301-T-26MAP.
     [Plaintiff]: I had Matt Farmer for a lawyer.  And we waived
     my speedy indictment for 30 days, and I proffered.
     .   .   .   .
     I was told by Matt Farmer that by me waiving my speedy
     indictment for 30 days and by me proffering, .   .   .

[16]  See docket 3, para. 13.

[17]  During the proffer, Plaintiff confessed that he had washed approximately five
pounds of powder methamphetamine down the shower drain while DEA was attempting
to enter the hotel room.

few days later on June 24, 2012, according to Plaintiff, Mr. Farmer told Plaintiff that he would be withdrawing based on a conflict of interest.[18]  Plaintiff then interviewed attorney Eric Kuske Leanza, and on July 16, 2012, Mr. Kuske Leanza filed a waiver of right to speedy indictment through September 1, 2012.[19]  Plaintiff contends that Mr. Kuske Leanza used Mr. Farmer's bar number to file the waiver,[20] and that Plaintiff never chose Mr. Kuske Leanza as his lawyer.  Plaintiff was indicted in federal court on July 26, 2012.[21]

Plaintiff's allegations, when compared to the docket filings in his criminal case, are factually inaccurate.  The first waiver of speedy indictment was filed on June 11, which was less than thirty days after he was arrested on the underlying federal charges on May 16, with May 16 being excludable in calculating the thirty days.  The waiver was in place through July 15.  On July 16, Mr. Kuske Leanza filed a waiver extending through September 1.  An indictment was returned against Plaintiff on July 26.  The total pre-

---

[18]   See docket 278, p. 25 in Case No. 8:12-cr-301-T-26MAP.
        [Plaintiff]: . . .  Matt Farmer had to get off my case
        because it was a conflict of interest.
In his allegations, Plaintiff intimates that the reason may have been his inability to pay.

[19]   See docket 17 in Case No. 8:12-cr-301-T-26MAP.

[20]   The waiver signed by Mr. Kuske Leanza filed at docket 17 carries the same Florida Bar number as the waiver signed by Mr. Farmer filed at docket 14.  The Florida Bar number could have been typed on Mr. Kuske Leanza's waiver by mistake.  In any event, Plaintiff has shown no prejudice by the filing of the second waiver.

[21]   See docket 18 in Case No. 8:12-cr-301-T-26MAP.

indictment period from his arrest on May 16 through his indictment on July 26, totaled a little over two months.

During the time both counsel sought waivers of speedy indictment, with Plaintiff's consent, Plaintiff was focusing on retaining counsel and determining whether he would cooperate.[22]  While these reasons are not automatically excludable from the speedy indictment period,[23] the delay in this case was not open-ended.  Although the Court did not make a specific finding that the ends of justice would be met by granting the waivers, Plaintiff was seeking his counsel of choice from late June to September when the Court appointed counsel for him.

Even if counsel had moved to dismiss the indictment and the court granted the dismissal, such dismissal would have been either with or without prejudice.  Zedner v. United States, 547 U.S. 489, 499, 126 S.Ct. 1976, 164 L.Ed.2d 749 (2006)  The court would have considered factors such as the seriousness of the offense, the facts and circumstances which led to the dismissal, and the impact of a reprosecution.[24]  18 U.S.C.

---

[22]  At a hearing held August 20, 2012, Mr. Farmer was present but not representing Plaintiff.  Plaintiff requested a continuance to retain private counsel.  See docket 38 in Case No. 8:12-cr-301-T-26MAP.

[23]  See United States v.Mathurin, 690 F.3d 1236, 1241-42 (11th Cir. 2012) (citing Zedner v. United States, 547 U.S. 489, 501-02, 126 S.Ct. 1976, 164 L.Ed.2d 749 (2006) and holding that the time during which plea negotiations are conducted is not automatically excludable).

[24]  "When the indictment is dismissed without prejudice, the prosecutor may of course seek — and in the great majority of cases will be able to obtain a new indictment, for even if 'the period prescribed by the applicable statute of limitations has expired, a

§ 3162(a)(2); <u>Bramlett v. United States</u>, 405 F. App'x 363, 366 (11th Cir. 2010)

(unpublished opinion).  "Where the defendant is charged with a serious crime, the delay

was minor, the defendant suffered no prejudice from the delay, and the government did

not actively seek delay, dismissal should be without prejudice."  <u>United States v. Jones</u>,

601 F.3d 1247, 1257 (11th Cir. 2010).  There is no question that the dismissal would have

been without prejudice given the severity of the crime and the relatively short time that

passed between the arrest and the indictment while Plaintiff was looking for the attorney

of his choice.  Having determined that any dismissal would have been without prejudice,

Plaintiff cannot establish prejudice under the <u>Strickland</u> standard.  <u>Chambliss v. United</u>

<u>States</u>, 384 F.App'x 897, 899 (11th Cir. 2010) (holding that petitioner did not suffer

prejudice based on his trial counsel's failure to seek dismissal of the indictment for a

speedy trial violation in that dismissal would have been without prejudice  in view of

serious nature of charges and the delay did not harm ability to present defense, and then

government would have re-indicted so outcome would not have been different).

　　　With respect to the fraudulent or unauthorized filing of either waiver, the record

belies Plaintiff's claim.  Plaintiff admitted at sentencing that Mr. Farmer had his

agreement to file the waiver.  Plaintiff's assertion that Mr. Kuske Leanza was not his

lawyer or that Mr. Kuske Leanza wrongfully filed a waiver in his file is also specious.  At

---

new indictment may be returned .   .   .  within six calendar months of the date of the
dismissal.' [18 U.S.C.]  § 3288."  <u>Zedner</u>, 547 U.S. at 499, 126 S.Ct. at 1985.

the change of plea hearing, Plaintiff admitted having Mr. Kuske Leanza as a lawyer,[25] and

the docket reflects both Mr. Farmer and Mr. Kuske Leanza representing him until Mr.

Britt filed a notice of appearance in September.[26]  Based on the docket of the underlying

criminal case, an indictment was returned within 30 days of the federal arrest based on

facially sufficient waivers filed by both Plaintiff's counsel.  Plaintiff has failed to show

either incompetent counsel or prejudice under Strickland.

## GROUND TWO

Plaintiff claims his counsel, Charles Britt, was ineffective for failing to conduct a

thorough investigation and for failing to move to withdraw his unknowing and

unintelligent plea.  Plaintiff asserts that Mr. Britt should have known the two waivers of

speedy indictment were invalid and the charges should have been dismissed.  Plaintiff

alleges that he would have moved to withdraw his plea had he known of the invalidity of

---

[25]   See docket 229, pp. 13-14 & 44 in Case No. 8:12-cr-301-T-26MAP.
[Plaintiff]:   Eric Kuske and Matt Farmer, my two previous
lawyers.
.  .  .  .
[The Court]:   All right. Do you have any complaints about
how they represented you?
[Plaintiff]:   No, sir.
.  .  .  .
[The Court]:   Are each of you fully and completely satisfied
with the advice and representation given to you by your
attorney in arriving at that decision?
[Plaintiff]:   Yes, sir.

[26]   Mr. Kuske Leanza also represented Plaintiff on a violation of supervised
release in Case No. 8:04-cr-542-26MAP at docket 86.  He filed a notice of appearance on
July 3, 2012, as co-counsel with Mr. Farmer in that case.

the waivers.  Plaintiff claims that his plea was unknowing and unintelligent because the Government reneged on its promise to not seek a sentencing enhancement in exchange for waiving his right to a speedy indictment and giving a proffer letter.[27]

Attorney Charles Britt, appointed by the court, filed a notice of appearance on behalf of Plaintiff on September 7, 2012.[28]  On September 17, 2012, the Government filed an information and notice of prior convictions under 21 U.S.C. § 851 stating that Plaintiff had two prior drug convictions, which qualified him for a mandatory life sentence.[29] Plaintiff argues that Mr. Britt had months to determine that the speedy indictment waivers were invalid because he did not enter a plea until January 2013 and was not sentenced until April 2013.  As discussed above, the record refutes any allegation that the waivers of speedy indictment were invalid in any way.

With respect to the voluntariness of Plaintiff's plea, the record belies any contention to the contrary.  Plaintiff entered a written plea of not guilty,[30] and a change of

---

[27]   On June 20, 2012, Plaintiff met with Mr. Farmer, signed a proffer protection letter, and gave a proffer.  See docket 3, paras. 14, 16 & 17.

[28]   See docket 45 & 46 in Case No. 8:12-cr-301-T-26MAP.  Plaintiff had been given from August 20, 2012, through September 5, 2012, to secure private counsel, but he had been unsuccessful.  See docket 38 in Case No. 8:12-cr-301-T-26MAP.

[29]   See docket 53 in Case No. 8:12-cr-301-T-26MAP.

[30]   See docket 116 in Case No. 8:12-cr-301-T-26MAP.

plea was scheduled for December 13, 2012,[31] and the trial for January 7, 2013.[32]  Plaintiff

did not plead on December 13, and trial was reset to January 28, 2013,[33] and again reset to

February 4, 2013, with a change of plea scheduled for January 28, 2013.[34]

      At the change of plea hearing held January 28, 2013, the Court asked Plaintiff if he

was stating under oath that he fully and completely understood each and every provision

of his plea agreement and how it would affect his case, to which he answered "yes."[35]

The Court explained that at the time of sentencing, Plaintiff could receive a two-level

downward departure adjustment for acceptance of responsibility and that the Government

could file a motion for one extra level downward, which he stated he understood.[36]  The

Court next advised Plaintiff that his plea agreement contained a low end provision, which

he stated he understood.[37]  The Court also explained that it did not have to accept any of

those recommendations, and Plaintiff could not withdraw the plea of guilty.[38]

---

[31] See docket 94 in Case No. 8:12-cr-301-T-26MAP.

[32] See docket 94 in Case No. 8:12-cr-301-T-26MAP.

[33] See docket 103 in Case No. 8:12-cr-301-T-26MAP.

[34] See docket 109, 110 & 111 in Case No. 8:12-cr-301-T-26MAP.

[35] See docket 229, p. 28 in Case No. 8:12-cr-301-T-26MAP.

[36] See docket 229, pp. 28-29 in Case No. 8:12-cr-301-T-26MAP.

[37] See docket 229, pp. 30-31 in Case No. 8:12-cr-301-T-26MAP.

[38] See docket 229, p. 31 in Case No. 8:12-cr-301-T-26MAP.

Plaintiff acknowledged that he was entering into each and every provision of his plea agreement freely, voluntarily, knowingly and intelligently because it was what he wanted to do and for no other reason.[39]  He agreed that he was fully and completely satisfied with each and every provision of his plea agreement.[40]  Plaintiff acknowledged that he was fully and completely satisfied with the advice and representation of counsel in arriving at the decision to plead guilty.[41]  He acknowledged that no one, including his lawyer or the Government, had made him any other promises to plead guilty, including any specific promise as to what sentence would be imposed or how much time he would have to serve in prison.[42]   Plaintiff agreed that no one, including his lawyer or the Government, had threatened or coerced him or a family member to make him plead guilty.[43]

When the Court asked Mr. Britt if he was aware of any other promises made to Plaintiff, he stated, "The only other promise is the representation by the Government before the plea is that the 851 enhancement would be repealed."[44]  The Government responded that "assuming the plea goes through today, we'll move to withdraw one of the

---

[39]  See docket 229, p. 42 in Case No. 8:12-cr-301-T-26MAP.

[40]  See docket 229, p. 42 in Case No. 8:12-cr-301-T-26MAP.

[41]  See docket 229, p. 44 in Case No. 8:12-cr-301-T-26MAP.

[42]  See docket 229, pp. 44-45 in Case No. 8:12-cr-301-T-26MAP.

[43]  See docket 229, p. 45 in Case No. 8:12-cr-301-T-26MAP.

[44]  See docket 229, p. 46 in Case No. 8:12-cr-301-T-26MAP.

851 enhancements."[45]  At sentencing, however, Plaintiff informed the Court that he had been looking at life and he was "told that the 851 was not going to be – was not going to be given to me, because I was told by Matt Farmer that by me waiving my speedy indictment for 30 days and by me proffering, I would enjoy the benefits of going to trial without an 851 enhancement."[46]  The Court reminded Plaintiff that he agreed under oath at his plea hearing that there was nothing outside the plea agreement that anyone had promised him regarding the sentence that would be imposed.[47]  Plaintiff continued to argue with the Court that "the 851 was supposed to come off."  The Court then asked if he wanted to withdraw his plea and go to trial, to which Plaintiff responded, "That's not what I want, Your Honor."[48]

Statements made during the plea colloquy carry a strong presumption of truthfulness.  Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); United States v. Anderson, 384 F.App'x 863, 865 (11th Cir. 2010) (quoting from United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994), that "[t]here is a strong presumption that statements made during a plea colloquy are true.") (unpublished

---

[45]  See docket 229, p. 46 in Case No. 8:12-cr-301-T-26MAP.

[46]  See docket 278, p. 58 in Case No. 8:12-cr-301-T-26MAP.

[47]  See docket 278, p. 59 in Case No. 8:12-cr-301-T-26MAP.

[48]  See docket 278, p. 60 in Case No. 8:12-cr-301-T-26MAP.

opinion).[49]  Plaintiff, contrary to his statements made at his plea hearing and despite his stated intent to proceed with sentencing rather than withdraw his plea, continued to assert that the Government promised him his sentence would not be enhanced for the sole consideration that he waived his speedy indictment rights for a total of less than two months.  The record shows that Plaintiff, when given the opportunity to disavow his representations made at his plea, chose to be sentenced, rather than to go trial.  In short, Plaintiff has failed to carry his heavy burden of showing that the statements he made at both the plea and sentencing hearings were false.  See United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988).  Based on the record, Plaintiff has failed to substantiate his newfound claim that he desired to withdraw his plea, go to trial, and risk receiving a life sentence.

Any contention that Mr. Britt did not properly investigate Plaintiff's case is without merit.  In October 2012, Attorney Britt filed a motion to suppress items found during the search of the hotel room.[50]  A motion to suppress was heard beginning on November 16, 2012, at which the Court heard from eight witnesses.[51]  The hearing

---

[49]   See also Hintz v. United States, 2012 WL 315280, at *8 (N.D. Ga. 2012) (stating that the defendant's "current attempt to disavow his previous sworn testimony at the plea hearing by creating some vast conspiracy amongst several highly regarded individuals against him does not meet this burden.").

[50]   See docket 74 in Case No. 8:12-cr-301-T-26MAP.

[51]   See docket 92 in Case No. 8:12-cr-301-T-26MAP.

concluded on November 19, 2012, at which time the Court denied the motion.[52]  Mr.

Britt's work in pursuing the suppression is evidence that he properly investigated

Plaintiff's case at some time prior to October 2012.

## CLAIMS RAISED IN SUPPLEMENT

Plaintiff claims that his conviction was obtained by prosecutorial misconduct for

many different reasons.  First, he alleges that Assistant United States Attorney Kathy

Peluso promised Plaintiff that she would not seek to enhance his sentence in exchange for

the waivers of speedy indictment.  As proof, Plaintiff submits a taped telephone

conversation he had with Mr. Farmer and a taped telephone conversation he had with Mr.

Britt.[53]  He claims that both conversations confirm that this was the deal with the

Government.  He further alleges that the § 851 enhancement for a life sentence was filed

on September 17, 2012, which was long before he filed his motion to suppress on October

24, 2012.  Hence, he argues, he had not shown an intent to go to trial at the time she filed

the enhancement, representing a breach of the agreement.

The Court has reviewed the two compact discs submitted.  The first disc is a

conversation he had with Mr. Farmer after he had been sentenced.  Plaintiff tells Mr.

Farmer that the deal with the Government was that he would waive his speedy indictment

rights, proffer, and preserve his right to go to trial in exchange for the Government not

---

[52]  See docket 93, 96 & 97 in Case No. 8:12-cr-301-T-26MAP.

[53]  See docket 18 & 19.

seeking a § 851 enhancement.  Mr. Farmer knew that he proffered on June 20, but no longer represented him when he was enhanced in September.  Mr. Farmer said that the deal consisted of his waiving his speedy indictment rights, proffering *and cooperating* in exchange for no enhancement.  The second disc is a conversation he had with Mr. Britt in which he tells him that Mr. Kuske Leanza committed "fraud on the court" by filing the waiver of speedy indictment using Mr. Farmer's bar number.[54]  Plaintiff also tells Mr. Britt that Mr. Farmer will attest that a deal for no enhancement was made with the Government.

At sentencing, Assistant United States Attorney Patrick Scruggs informed the Court that at some point plea negotiations broke down and "there had been no promise that the life sentence was coming off, or the life enhancement was coming off the table."[55] He stated that after this breakdown occurred the suppression hearing took place.  He explained the plea agreement as "contingent on if he cooperates, he pleads, he doesn't put the Government through a suppression hearing, [and] he doesn't say he's going to go to trial."[56]

Against this backdrop, Plaintiff glosses over the two ingredients of the agreement that he left out – truthful cooperation and foregoing trial.  In addition to these conditions,

---

[54]   This contention has already been discussed in this order.

[55]   See docket 278, p. 28 in Case No. 8:12-cr-301-T-26MAP.

[56]   See docket 278, p. 29 in Case No. 8:12-cr-301-T-26MAP.

which are imposed and measured subject to the Government's discretion, Plaintiff overlooks the fact that he evaded the enhanced mandatory life sentence.  Going to trial, which he confirmed at sentencing he did not want to do, would subject him to the very real possibility of receiving an enhanced mandatory life sentence.  Plaintiff cannot establish any presumptive or actual prosecutorial vindictiveness on the part of the Government in seeking enhancement.  Cf. United States v. Saltzman, 537 F.3d 353, 359 (5th Cir. Cir. 2008) (citing United States v. Goodwin, 457 U.S. 368, 384 & n.19, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982) ("[O]nly in a rare case would a defendant be able to overcome the presumptive validity of the prosecutor's actions through [bringing enhanced charges for exercising a procedural right]").

Other alternative grounds for relief include various claims of conflicts of interest concerning Mr. Farmer and his representation of Lydia Santiago in another criminal case.  Such alleged conflicts of interest amount to hypothetical concerns only, not actual conflict.  In any event, Plaintiff has failed to show that any conflict adversely affected Mr. Farmer's performance or any prejudice resulted from Mr. Farmer's representation based on a conflict.  See Lightbourne v. Dugger, 829 F.2d 1012, 1023 (11th Cir. 1987).[57]

---

[57] All of the other superficial grounds raised are not cognizable claims, including the transfer of his supervised release proceeding, the firearm in the hotel was not loaded and therefore could not support enhancement, Mr. Britt was ineffective for disagreeing with him at sentencing, and the Government directed his wife to divorce him.

-19-

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion to

Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Dkt. 1) is

**DENIED**.  The Clerk is directed to enter judgment for Defendant, to terminate all

deadlines and pending motions, and to **CLOSE** the case.

Additionally, the Court declines to issue a certificate of appealability because

Plaintiff has failed to make a substantial showing of the denial of a constitutional right as

required by 28 U.S.C. § 2253(c)(2).  Nor will the Court permit Plaintiff to proceed on

appeal *in forma pauperis* because such an appeal would not be taken in good faith.  See

28 U.S.C. § 1915(a)(3).  Instead, he will be required to pay the full amount of the

appellate filing fee pursuant to 28 U.S.C. § 1915(b)(1) and (2).

**DONE AND ORDERED** at Tampa, Florida, on November 21, 2014.


    s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**


COPIES FURNISHED TO:
Counsel of Record
Plaintiff, *pro se*

-20-